Will the clerk please call the next case? 3-24-0553, Kevin Wright on behalf of himself and all similarly situated individuals, Appley v. Silver Oaks Behavioral, LLC, Appellant. Counsel for the appellant, you may proceed. Thank you. May I please the court? My name is Jason Selvey and I represent the defendant appellant, Silver Oaks Behavioral, LLC. We're here today to consider a single question of law pursuant to Illinois Supreme Court Rule 308 and it's as simple as it is important. Does the collection, use, or storage of a healthcare worker's finger scan data fall outside of the Illinois Biometric Information Privacy Act's exclusion for information collected, used, or stored for healthcare treatment, payment, or operations under the Health Insurance Portability and Accountability Act by virtue of the fact that the data was collected, used, or stored by a time clock device? Counsel, I'm going to ask you right at the start here. Why do you have by virtue of the fact data was collected or stored by a time clock device? What's the relevance of any of that language in that? Well, excuse me, sorry, Judge, or Justice. Here, the relevance is this. In our case, the judge made a finding based on the fact that there was a time clock at issue and from my perspective, it should only be relevant in that it's part of the case-by-case analysis that our Supreme Court put forth in Mosby v. Ingalls Memorial. So the reason we have included it in there is just to demonstrate that we are not out, that you have to do an analysis of whether or not the data that was taken by the time clock device and used for one of the enumerated purposes to show that you're not out. You have to do a case-by-case analysis per Mosby. So you're saying it's a fact question, Counsel? Well, no, it's not a fact question here. This just goes broadly to the concept of whether or not this sort of data that is used, that is collected by a time clock and used by one of these enumerated purposes under HIPAA, whether or not it is something that is ruled out, that you don't have a case-by-case analysis. We're actually not requesting that the court make a decision in our case today whether or not that time clock is subject to the health care exemption. And I'm sure your justice does know that. Well, I'm trying to remember maybe both of you agree that the time clock is agnostic, has nothing to do with the real issue of this case, does it? All right. Well, Judge, so if the time clock is not ruled out, if the data that the time clock takes goes into what I'll say one of the buckets under HIPAA that is used, then if that's the case, the health care exemption applies and defendant prevails in the case. Well, I mean, wasn't that to be decided at the trial court and a proper appeal brought to us? I mean, I'm wondering if 308 was improvidently granted in this case. Well, Judge, I'll say this. It could have been brought, of course, after a finding by the judge, but here the judge, the circuit court judge, agreed that this is just a question of law, whether or not the time clock data can... Well, let's forget the time clock. I don't think you have even... You both agree that's irrelevant, I thought, in your briefs basically. Well, Judge, we think it's... Isn't the real... What's the real question in this case? It's not the time clock. Well, Judge, there's two questions the way I see it. The one is whether or not subsection A and subsection B of the BIPA, which is the policy requirement and the consent and information requirement, were violated. Or number two, whether or not defendant's defense of the health care exemption recognized in the BIPA itself applies and defendant prevails on that ground. Those are the overall two questions, I think. But the second question would be literally a case-by-case, plaintiff-by-plaintiff inquiry. Well, Judge, from the standpoint that, yes, that our Supreme Court Editor Mosby says it's a case-by-case analysis. It is. That's true. This is just a broader question of law and whether or not we rule out that data. It cannot be under the exemption, whether or not that's the case based on the question that we've asked. So how well developed is that data? Let's forget the time clock. Isn't that to be done in the trial court? I think there was a denial of a motion to dismiss, correct? Yes, Judge. And then everybody went together and apparently the trial judge wanted to punt it up to this court. Well, Judge, we requested it, but yes, the circuit court judge did agree with that. And when they agreed with it, who started it? We did, Judge, the defendant. Is this just a backdoor way of getting at a revisiting of the trial judge's motion to dismiss? Well, Judge, I don't think that's the way that I would describe it. I mean, here, everyone was in agreement that this is a key question. The judge obviously thought that this would clarify and help her clarify her ruling. And obviously, she agreed to try to send it up, and the court here certified it. Counsel, can you point me in the record as to where Judge Petra-Hangaro indicated that she wasn't going to look into the factual nature of this time clock? And certainly, if it's somebody that's cutting the grass outside of the hospital who never walks inside the building ever, just goes to a maintenance shed, they're not providing health care services. But in some scenario, if you're in the ER unit taking care of ICU children, and we have to know how many hours you're working, that could be health care, I suppose. Did she ever say that time clock? No, it's not health care. Did she ever rule that way? Well, Judge, she did rule the way of that, that the time clock was not, sorry, it's not the time clock, it's the data from the time clock, that it could not be support the health care exemption. And then, I mean, that's why she sent this up, was because- It wasn't dismissed, though. This wasn't summary judgment. How did she know all these things? Well, Judge, this was a 2619A9. So we submitted evidence here, including in the form of our CEO that gave the judge facts, not of the summary judgment variety, but ones that are admissible under A9. And that's where she got information regarding this. So I should be looking through your affidavit to answer my question. I think Mr. Selby is what I'm gleaning from that, look at that affidavit. And you're saying that she did not agree with the affidavit and thought the pleadings and the answers to the pleadings was sufficient to defeat your motion to dismiss. Well, Judge, let me, if I could step back- Please do. Oh, please do. And let me go back just a little bit to the start of when we were conversing just now, talking about the person mowing the lawn. This is the way that, I think, after Mosby, our Supreme Court put it. There has to be a case-by-case analysis. And under that analysis, the court actually said that the source of the data does not matter. That is in paragraph 41 of Mosby. So why do we have it in this question? So, in this question, it's, again, Judge, it's because that was part of the circuit court judge's rationale. And she sent it to the court here to take a look at it because it would have an effect on her case. Because it's a defense that would defeat completely plaintiff's case if there was the healthcare exemption applied. I don't understand that logic. If it's a factual, if this needs to be delved into on a factual level, what's the information? How is it used? How is this one issue that should have been dismissed? Well, Judge, I look at it this way. We're looking at, what we're asking the court to look at, is the broad issue of whether or not data from this device that falls into one of the buckets that's referenced in, under HIPAA, that's referenced in the question. Well, hold on, hold on. That takes a factual inquiry. You're asking us to give an advisory opinion is what you're telling me. Well, Judge, in this case, there just isn't, let me step back again. In Mosby, so our Supreme Court there, actually did look at the facts in a limited fashion. If you were to look towards the end of the opinion, they did. And in the same situation here, if you look at what we submitted on an A9 motion, which was also what it was in Mosby, if you look at that, then there's the, what I'll call limited information you need, where the question is just as a matter of law, whether or not data from this device can support, can, not does right here, but can support the healthcare exemption, which is written into the text of the BIPA. Oh, excuse me. So I think we covered a lot of what I would say there, but let me just go into a little bit here about some of the issues and why this is into the buckets. As you're, you know, the justices, I'm sure you saw that the HIPAA buckets, so to speak, that this has to fall into are treatment, which is not an issue in this case, and healthcare operations, and also payment. And here, those do come into play. And it is something that can support the application of the healthcare exemption here based on the data from the time clock. And so, you know, as an example, if nothing else, here with respect to staffing at a hospital, and this is a hospital, so there's no doubt that it's a healthcare entity, that based on that, they have staffing concerns. There are laws about this. And just as a general matter, these are the under HIPAA that need to be met in order for the data from the time clock to be, excuse me, to be potentially subject to the healthcare exemption. Where would we find a judge's ruling on this argument you're giving us that's upon appeal before us? Judge, I don't have the page number, but I'm happy to give it to you after the argument today, if that would work. And let me touch on the other one, which for here, the other HIPAA category that is recognized by, in the BIPA itself, the language, and also in MOSB with our Supreme Court. And that's, that this is, that here, the data and just data that comes from a time clock can meet the category of payment under the BIPA and the healthcare exemption. So here, the payment, and I'm not going to read you the entire definition of payment. It's pretty long, and I'm sure you saw it in the briefing that we had. But under these circumstances, these, there are, for example, things with staffing and with other items that are required to be met by law, for example, regulations and so forth. And so based on that, in order to do that, people track time, for example, as part of a biometric process, and they use that data in order to establish the elements necessary in order to get payment under the act. And an example would be under the CMS, the Medicare and Medicaid, we are required to comply with all of the, with all of the other laws, I would say, basically, under those circumstances. So another instance where, here, and, you know, I wanted to touch on one other thing, which is that here, you know, in our mind, Mosby is dispositive. Mosby was also a 619A9. There was also the detail that we have in this case, and the court did find that essentially a lockbox, you know, I'm simplifying it, was subject to the BIPA. Now under BIPA, there is absolutely nothing there that says there's any particular data that can't be used for the healthcare exemption. And in Mosby, there are specific language that says it doesn't matter where it comes from. And so under Mosby here, even if it's a different device, data from a time clock would not be ruled out for purposes of, for purposes of the healthcare exemption. And that's our Supreme Court talking. And so in this case, it would also be like that. So unless you're, unless the justices have any further questions, I will say that the defendant appellant asks that the justices rule on the certified question in the negative. Thank you. Any questions? I do. And I'm not sure if you'll be able to answer, Mr. Selby. And I understand the confusion since we're, we've granted this 308. But I want to, referring back to the ruling of Judge Petra Aguero and your affidavit, you had filed a supplemental record in this case. I'm not looking, and I'm looking at it right now. If you could find that for me in the interim where, while Mr. Richards makes his argument, I'd really appreciate that. And what I specifically assigned to your affidavit. So the Mosby case is very interesting. Judge Mikva in the appellate court was the one who dissented. And there was a consolidated case with a circuit court case and an appellate court case, the Supreme Court. I mean, I couldn't quite clean how they accepted the facts that they did in reading both of those opinions. I don't know where they got it, but obviously they did. So if you could point us to some facts, that would be helpful for me. Thank you. And I'm sorry, can I clarify, Justice? I apologize. You're looking for essentially the affidavit that I talked about and its reference in the record, so to speak. Yes. The affidavit that you used in your 2619 motion, either originally or in response to plaintiff's reply, or reply to their response, I should say. Thank you. I just wanted to give you the right thing. Thank you. Thank you, Justice Oldridge. Sure. Any other questions? Mr. Richards, you may reply. I wish you'd reply to the way we started off this argument for you. May it please the court. My name is Jordan Richards. I represent the plaintiff appellee, Mr. Wright. And to address this issue of whether the scope of this appeal was properly narrowed to the issue, this is an issue that we addressed with the court when we opposed the certification of the actual appeal to begin with. And we believe that the actual issues that we're dealing with here right now really were not fully developed at the trial court level. To your Justice's point that you made in discussing this with Mr. Selby, there are a lot of other factual circumstances that we will, and I intend to bring up later in my response here, that need to be vetted and figured out back at the trial court level before an ultimate decision is issued on what Silveroaks is asking you to rule on today. Our position is that in this appeal, Silveroaks is attempting to stretch the applicability of the health care exemption to cover every single employee who works in the health care industry, including Mr. Wright. Now, Justices, keep in mind that Mr. Wright worked for Silveroaks as a housekeeper. He had biometric information taken without consent in order for Silveroaks to register his fingerprint on this device. And the issues here really do begin and end with Mosby. And in Mosby, this is a direct quote from the Supreme Court, the health care exemption should not be construed as a broad categorical exemption of biometric identifiers taken from the health care workers. And that's from paragraph 57 from the Mosby decision. Keep in mind, there is no regulation or law at the federal or state level that requires Silveroaks to use a biometric time clock. That was Silveroaks decision. And as a result of that decision, Silveroaks must comply with the BIPA requirements. Now, notwithstanding the guidance that I just quoted from Mosby, Silveroaks is arguing that the health care exemption applies in this case, but payroll systems, the two HIPAA buckets that Mr. Selby referred to, payroll systems exist across all industries. And if Silveroaks theory on this appeal prevails, then every health care employer could evade BIPA by labeling timekeeping as health care operations. Well, don't we need to have this whole proceeding decided in a circuit court? I know, I mean, I can read your pleadings, the opposition pleadings. You know, I don't see how the question that you agreed with, you may have objected to, but you signed off on and was sent up by the circuit judge to this court. Okay. I just don't understand it, what you're doing even here. Yeah, did judge, my question is, did Judge Petragero rule that under all circumstances, any information collected on a time clock is automatically not subject to any exemption under BIPA? If it's a time clock like this, then no exceptions can ever apply. Did she rule that? Because that's the question that you sent up kind of. From the transcript at the trial court level at the hearing, Justice Peterson, the issues and questions pressed by Judge Petragero centered around the use of this time clock. While we disagreed with the appealability of the issue, Judge Petragero advises that she was inclined to send this issue up and this question up to this court. We did confer with the other side, we agreed to language with it. We respectfully believe that the factual record was not fully developed. And I think we made our position clear on that in our briefs that we've submitted to this court. But this issue, and this is where I want to pivot and get into those factual issues that need to be vetted and figured out before this court can issue a ruling. Well, I think we understand what those issues are. It's just we don't have them before us. We have no rulings on them. That's correct, Justice Holdredge. And the issue here that I want to bring up for a moment is during the argument, and this really goes to what your honors are saying here. And that's the fact that throughout Mr. Selby's argument, he kept referring to data. He used the term data. And in their brief, in the underlying motion to dismiss, in the reply, they only refer to the phrase punch data. And they use this phrase eight times in the opening brief. They use it 21 times in the reply brief. However, Silveroaks in its CEO affidavit, it failed to demonstrate anywhere what this punch data really is. They failed to establish if it's actually biometric information. And in fact, the affidavit that they rely upon to seek dismissal of this case under the healthcare exemption, it states that this punch data is compiled from the employee's use of the time clock. However, it does not in any conceivable way claim that the biometric scans themselves, which are subject to the allegations in this lawsuit, that those scans are used by Silveroaks for any purpose. And if you look closely, that affidavit submitted from the CEO does not use the phrase biometric information or biometric identifier anywhere. You won't see that phrase come up anywhere. And if this was in fact biometric data, they would call it that. If this was a fingerprint scan, they would have attached it to that affidavit and shown you, your honors. And this is ultimately fatal to Silveroaks' argument. I want to address another issue with this punch data that is in any event fatal to Silveroaks' appeal. Now, recently, the Fifth District Court of Appeals issued decisions in the cases of Verity and Klein. And those decisions on appeal reversed two trial court dismissal orders in cases involving BIPA that are very similar to the underlying facts in this case. In those cases, Verity and Klein, the defendants also referred to punch data, but failed to attach any of the actual punch data to the affidavits. Well, the affidavits were not sufficient under our rules of procedure. Is that correct? Isn't that what the Fifth District is saying? That is what the Fifth District said. Yes, your honor. And has it been anything further? It's been remanded back, I think, hasn't it? To my knowledge, there's nothing further at this point, Justice Holdren. And Silveroaks relies entirely on this affidavit from the CEO to claim that punch data was used for healthcare operations. But that's not the issue that is on appeal here. The issue surrounds biometric information, biometric identifiers. And because Silveroaks failed to attach any punch data to the affidavit, this falls squarely in the issue that was addressed by Klein and Verity. And it's further reason why the lower trial court's decision to deny the motion to dismiss should be affirmed. Now, to the extent that in his rebuttal, Mr. Selby raises the... So is that what's properly presented before our court right now? There was an appeal from that decision? From the decision of Verity and Klein, your honor? Well, you just argued that the dismissal should be affirmed. I mean, that's usually what we on an appeal, a regular appeal. Yes, your honor. The denial of the motion to dismiss should be affirmed. So Judge Petrangaro's ruling to deny the motion to dismiss is what we're seeking this court to affirm. Well, I think I got a 308 question here. And to that issue and to that point, the court under 308 can review and look at the docket de Well, what evidence do we have attached to this declaration under Rule 191A that we can rely on and that would actually support the dismissal that Silveroaks is seeking in this case? Where is that filed in our court, that question on review? That question is not filed before... Okay. So you're talking about a potential appeal that's not before us and you're arguing it. Respectfully, Justice, the issue in Klein and in Verity, that decision was rendered in and given down after the brief in this case was fully briefed. The recent notices of supplemental authority were presented to this court at my urging to Mr. Selvey to notify this court of the changes and the reversals at the appellate level on decisions that Silveroaks cited in their reply brief in this case. So the omission here, and this goes to the factual issues that your honors have been addressing and have brought up. And this point over punch data and what this punch data is and where it is, that's another reason why the motion to dismiss the decision to deny that motion should be affirmed because Silveroaks should have an opportunity respectfully back to the trial court level to show us what this punch data is. Judge Petrangaro should be given an opportunity to look and examine what this punch data is. Is it even biometric information to begin with? And we respectfully would take the position that it's not. And if it was biometric information, it would have been attached. It would actually be called biometric information, but it's not anywhere. Counsel, just as a broad question here. So you, your position is the 308 certification question was improvidently granted. We should be back at the trial or you should be back at the trial court. Is that correct? That is our position. And we did take that position initially, Justice Holdridge. I understand the questions that have come in light of our agreement to this issue. We ultimately do believe that the 308 appeal should not have been granted in this case. There does need to be a more developed factual record before this can go up. Okay. Thank you. And these cases that I've recently cited, there's one additional case I want to bring to the court's attention. And that case is the Measaw case that we reference in the supplemental notices of supplemental authority. Measaw I believe is an important case for you to consider because that's a trial court decision. Well, if it's improvidently granted, why would we consider that? I'm presenting this purely in the instance that the court does not believe that it was improvidently granted. I'm merely presenting this in case you do decide to. I just want to get the context of your argument there. Yes, Justice. Thank you. The issue with this Measaw case is that Measaw originally granted the motion to dismiss under similar circumstances. Now, this Rule 191A issue was not presented to the trial court by the plaintiff initially. And it was after the decision in Verity and after the decision in Klein that the plaintiff filed the motion for reconsideration. The court ended up granting that, notwithstanding the fact that the plaintiff didn't raise those arguments initially. And the court's quote from that decision that I want to bring your attention to is, the rule is the rule, and the defendant failed to comply with the rule. And that's the exact same thing that happened in this case. So to the extent that your honors are willing to determine that the case was properly, is properly before you under Rule 308, you're still dealing with this issue and problem over not knowing what this punch data is because it was never provided and attached as required under Rule 191A. There's precedent in this court to support claim that the denial of the motion to dismiss was appropriate in light of this Rule 191A deficiency. That's the case of Penny MacCorp versus Colley, C-O-L-L-E-Y, cited at 47 Northeast 3rd, 564, a third district appellate court decision from December 14th, 2015. And in that case, the third district court of appeals specifically stated, quote, the failure to attach supporting documents is fatal to the submission of an affidavit as supportive evidence. So this argument, this case supports our argument that Silveroak's CEO's affidavit is woefully insufficient because there's nothing attached to it purporting to be punch data. Now, any argument in rebuttal from Mr. Selvey that me saw Verity or Klein are irrelevant is contradicted by the fact, by two points here. First of all, Silveroak cited these cases initially when they were ruled and determined to be in their favor. And second of all, Mr. Selvey's firm was the exact same law firm that represented the defendant in Klein and in Verity. So they surely had noticed that these decisions were overturned and that their underlying arguments were no longer supported by good law. As it relates to the issues surrounding HIPAA and these buckets that Mr. Selvey addressed, HIPAA is designed to protect patient health information, not employment records. And the requirement to maintain and keep time records in the workplace is imposed on every single employer in the state of Illinois, not just those in the healthcare industry. So Silveroak's attempt to recast payroll entries as healthcare operations would completely undo HIPAA's protection for thousands of Illinois workers. In closing, I want to urge your honors that if the court accepts Silveroak's interpretation, it would effectively exempt all healthcare employees from HIPAA, housekeepers, receptionists, even landscapers, as mentioned by the justices earlier, simply because their employer is in the healthcare industry. And I understand that this is only if your honors get to that issue and get to that question after Rule 308. But this is precisely the outcome Mosby warned against. The healthcare exemption is narrow and it must be based on the purpose of the data's use. And for these reasons, we respectfully request that the court affirm the trial court's denial of Silveroak's motion to dismiss. Any questions for counsel? No. Thank you, counsel. Okay. Counsel, you may reply. Thank you. And first, Justice Hetzel, SR 269 is where the the affidavit is. And let me just start with client authority. I am one of the attorneys that represented the defendant in those cases. 191A was the reason for the supporting affidavit, why it was denied. However, that's not what's at issue here. We're very far afield from the Rule 308 question, which is just whether or not data from time clocks can go in one of the HIPAA buckets and support the healthcare exemption. And also, as far as the warning in Mosby, which is there about getting so far afield with who could be covered. First, it's a case-by-case analysis, which is what Mosby says. And that's true. That is solid, firm law, is that it's going to be case-by-case. And in addition to that, we're not seeing any categorical ruling here with respect to healthcare workers and whether or not their data from a time clock can support the healthcare exemption. The party that is seeking that is the plaintiff, because they're asking- For 308, Mosby. Counsel, you filed the petition for 308, right? Ah, that's correct, Judge. And you agreed to frame it in the negative, asking the question that plaintiffs would like us to answer in the positive. Isn't this just an attack on Judge Petrangelo's ruling? All right. Justice, I don't think it is. The circuit court judge and my opposing counsel, and we got together and wrote the question. So, I think that the circuit court judge was actually, you know, in my mind, fully for this, to resolve the question. And so, in that way- You're not the same committee that got together to create a horse and came out with a camel? No. No, we're not the same one. Okay. Just checking. Justice, and I want to touch on the punch data issue. And we called it the punch data. That's in some of the briefing. That's correct. But I want to talk about what the BIPA says. And we've got to go back to the statutory text here. It says nothing about what kind of data it is here. Like, what kind of data? It's used on the time clock, but what kind of data we're talking about? It does not say that in the BIPA, because it's broad in that way, in that it doesn't make that kind of determination. So, whether or not we attach punch data or any kind of data is not relevant when we're just asking the basic question of law of whether or not data used in the time clocks can support the health care exemptions application. And that's a question of law. Again, we're not even asking that for our case. That'll ultimately be a question for the circuit court if you were to rule in favor of the defendant appellant in this case. And as far as all industries using the time clock, again, we realize that. I mean, there are many industries that use it. But what's different here is that, first of all, the health care exemption exists. There's no warehouse exemption, for example. And the way that that here, any kind of time is intertwined with the health care function of the organization. Still, it has to be done on a case-by-case basis per Mosby. But the way that it's intertwined with things like staffing regulations, for example, and other things like cleanliness, which is something that if you saw in our briefing that plaintiff here was responsible for. And further, even with this individual, again, we're not asking for the health care exemption to be decided by this court here. We acknowledge that. And so here, again, it's something that he would have to be looked at on a case-by-case basis. And whether or not, for example, him having to follow OSHA rules and what he did, and not just do basic things, whether or not that applied in this instance, for example. So I know we're talking about facts, but at the same time, we can make this, I think we can make this decision, just this basic decision that will help us below and moving on to whether or not data scanned and used by a time clock that goes into, again, I keep saying buckets, but into the HIPAA buckets, whether or not that can support the health care exemption and whether or not that defense has the possibility of applying. And again, it's in the negative, as the justice said, whether or not it has the ability to apply in the circuit court. I see my time's up. So thank you. If you have any more questions, I'm happy to answer them. But otherwise, again, we'd ask for this court to answer the certified question in the negative. Questions from the bench? I have no more. Okay. Thank you, counsel, both for your arguments in this matter. It will be taken under advisement and a written disposition shall issue. At this time, court will be in recess for the next case.